## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-cv-24822-ALTMAN

**OBA NEMBHARD**,

    *Petitioner*,

*v.*

**MARK INCH, SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS**,

    *Respondent.*

_____/

### <u>ORDER</u>

The Petitioner, Oba Nembhard, filed an Amended Petition under 28 U.S.C. § 2254, challenging the constitutionality of his state-court conviction. *See* Amended Petition [ECF No. 12]. The Respondent filed a Response [ECF No. 17], and Nembhard replied [ECF No. 29], so this case is ripe for resolution. After careful review, we **DENY** Nembhard's Amended Petition.[1]

### BACKGROUND

Nembhard was charged by an amended information on February 17, 2015, in Miami-Dade County, Florida, with attempted second-degree murder, in violation of FLA. STAT. §§ 782.04(2), 777.04, and 775.087 (Count 1); robbery using a deadly weapon or firearm, in violation of FLA. STAT. §§ 812.13(2)(a) and 775.087 (Count 2); aggravated assault with a firearm, in violation of FLA. STAT. §§ 784.021(1)(a) and 775.087 (Counts 3 and 4); possession of a firearm by a convicted felon, in violation of FLA. STAT. §§ 790.23(1) and 775.087 (Count 5); and attempted felony murder with a deadly weapon or aggravated battery, in violation of FLA. STAT. §§ 782.051(1) and 775.087 (Count 6). *See*

---

[1] We **VACATE** the order referring this case to U.S. Magistrate Judge Eduardo I. Sanchez for a report and recommendation. *See* Order Referring Case [ECF No. 32].

Amended Information [ECF No. 18-1] at 57–64. Before trial, the state court severed Count 5 from the remaining counts. *See* Answer Brief [ECF No. 18-1] at 131.

Those charges arose from an incident that occurred on March 21, 2012. At trial, co-defendant Axvier Hatch—who said that he'd known Nembhard "about 14 years"—testified that he drove Nembhard and two others to an apartment complex in his "2002 Pontiac Firebird convertible." Trial Transcript V [ECF No. 19-5] at 97, 100–02, 108–12.[2] At the complex, Nembhard and the others exited the car and told Hatch to "come back in . . . 15 minutes." *Id.* at 111:25–112:1. During that time, David Montecino and his girlfriend, Janette Garcia, stepped out of their apartment with their daughter. A man—whom they later identified as Nembhard—walked up and demanded Montecino's gold chain, aimed a gun at the family, and shot Montecino twice. *See* Trial Transcript IV [ECF No. 19-4] at 53–58, 73–74, 151, 166–67, 175, 182, 190–91.

Hatch, who'd been waiting in the parking lot, heard two gunshots and a woman screaming. Shortly after, he saw Nembhard approaching his car from the complex. *See* Trial Transcript V [ECF No. 19-5] at 113–14. Nembhard entered the car, told Hatch to "pull off," and made a phone call to an unknown person, whom he told that he'd gotten a chain worth $1,500. *Id.* at 114–15. Hatch drove Nembhard to another location, where Nembhard left the car with the chain and later returned with cash. *See id.* at 117–18. Nembhard told Hatch that he'd "shot the guy in the thigh" as "a warning shot." *Id.* at 117:11–12. The evidence showed that, after his arrest, Nembhard admitted to Detective James Hatzis that he'd been in the "Pontiac" at some point that night. *Id.* at 191, 194–95. And Montecino, Garcia, and Hatch each identified Nembhard as the perpetrator at trial. *See* Trial Transcript IV [ECF No. 19-4] at 57–58, 151, 168; *see also* Trial Transcript V [ECF No. 19-5] at 96. No witnesses testified for the defense.

---

[2] For transcript citations, our page cites come from the blue CM/ECF header pagination.

The jury found Nembhard guilty as charged. *See* Verdict [ECF No. 18-1] at 72–76. While Nembhard's conviction and sentence on Count 1 (the attempted second-degree murder) were later vacated, *see* Transcript of March 18, 2025 Proceedings [ECF No. 19-8] at 60:5–9, Nembhard was adjudicated guilty and sentenced to life in prison on the armed-robbery and attempted felony-murder counts, and to five years in prison for the aggravated assault counts,[3] *see* Sentence [ECF No. 18-1] at 83–87. Nembhard appealed his attempted felony-murder conviction, *see* Initial Brief [ECF No. 18-1] at 104–24, but the Third DCA affirmed, *see Newbhard v. State*, 237 So. 3d 1075 (Fla. 3d DCA 2017),[4] and the Florida Supreme Court denied Nembhard's petition for discretionary review, *see Newbhard v. State*, 2018 WL 1475198 (Fla. Mar. 26, 2018).

Nembhard then filed a postconviction motion under Florida Rule of Criminal Procedure 3.850, alleging ineffective assistance of counsel. *See* Am. Post-Conviction Relief Motion [ECF No. 18-2] at 59–123. The trial court denied that motion, *see* Order Denying Motion for Post-Conviction Relief [ECF No. 18-2] at 141–42, and the Third DCA affirmed, *see Nembhard v. State*, 299 So. 3d 475 (Fla. 3d DCA 2020).

So, Nembhard filed a habeas petition in the Third DCA, asserting (among other things) ineffective assistance of appellate counsel, *see* Petition for Writ of Habeas Corpus Alleging Ineffective Assistance of Appellate Counsel ("IAAC Petition") [ECF No. 18-3] at 3–104—a petition the Third DCA denied without elaboration, *see Nembhard v. State*, 302 So. 3d 874 (Fla. 3d DCA 2020).

Nembhard responded with a second (*i.e.*, a "successive") Rule 3.850 motion in the trial court— alleging (again) ineffective assistance of counsel. *See* Successive Post-Conviction Relief Motion [ECF

---

[3] Nembhard's sentence was later reduced to 21 years in prison, to be followed by a five-year term of probation. *See* Mitigated Sentence [ECF No. 18-1] at 163–67.

[4] There's some confusion about whether the Petitioner's last name is Newbhard or Nembhard. *See* Response [ECF No. 17] at 2 n.1 ("Petitioner's last name is spelled Newbhard or Nembhard."). He's mostly gone by "Oba Nembhard" in *this* case, *see* Am. Petition [ECF No. 12] at 1; *see generally* Reply [ECF No. 29]—so that's the name we'll use.

No. 18-3] at 106–242. The trial court denied this "successive" motion, *see* Order Denying Successive Post-Conviction Motion [ECF No. 18-3] at 250–52, and the Third DCA affirmed, *see Nembhard v. State*, 2020 WL 6305701 (Fla. 3d DCA Oct. 28, 2020).

Nembhard filed his initial § 2254 petition on November 23, 2020. *See* Initial Petition [ECF No. 1]. U.S. District Judge Jose E. Martinez of our Court ordered him to cure certain "pleading deficiencies," Order Re Non-Compliance and for Amended Petition [ECF No. 6] at 4, after which Nembhard submitted the now-operative Amended Petition. This Order follows.

**STANDARD**

**I.      The Antiterrorism and Effective Death Penalty Act ("AEDPA")**

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529

4

U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under § 2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state

5

court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court has explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007))). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." *Ibid.* (emphasis in original); *see also*

*Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.     AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, they must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure— prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the

claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State,

8

through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

**DISCUSSION**

In his Amended Petition, Nembhard asserts the following nine grounds for habeas relief: (1) that his trial lawyer was ineffective for not telling him that the State's "15 year[ ] plea offer was in his best interest" (Ground I), *see* Am. Petition at 6; (2) that his lawyer was ineffective and denied him "the right to a fair trial" by failing to "investigate" and "blanket call" half of his witness list (Ground II), *id.* at 8; (3) that his lawyer was ineffective and denied him "the right to a fair trial" by not "disclos[ing] discovery and crucial evidence being used against" him (Ground III), *id.* at 9; (4) that his lawyer was ineffective and denied him "the right to a fair trial" by "failing to investigate, interview, [and] locate alibi-witnesses prior to trial" (Ground IV), *id.* at 11; (5) that the trial court erred in convicting him of "attempted felony murder" (Ground V), *id.* at 13; (6) that the trial court erred in "not declaring a mistrial" when jurors allegedly discussed the case before deliberating (Ground VI), *ibid.*; (7) that he was denied a "fair trial" when the prosecutor called him a "felon" in front of the jury, and that both his trial and appellate lawyers were ineffective for not raising this issue in the state courts (Ground VII), *ibid.*; (8) that he was denied a "fair trial" when identification witnesses were "allowed . . . in the courtroom before testifying," and that his appellate lawyer was ineffective for not raising this issue on appeal (Ground VIII), *id.* at 14; and (9) that the trial court "abused its discretion" when it allowed "highly prejudicial" photos into evidence, and that his appellate lawyer was ineffective for not raising this issue on appeal (Ground IX), *ibid.* As we'll explain, each ground is meritless.

## I.      Ground I

In Ground I, Nembhard argues that his trial counsel was ineffective for failing to "properly and reasonably advise [him that] the 15 year[ ] plea offer was in his best interest" and by "fail[ing] to properly convey the plea offer." *Id.* at 6. The Respondent concedes that this claim is exhausted, *see*

9

Resp. at 24, since Nembhard advanced this ineffective-assistance claim in his initial Rule 3.850 motion, *see* Am. Post-Conviction Relief Motion [ECF No. 18-2] at 60–74. The trial court denied that motion, *see* Order Denying Motion for Post-Conviction Relief [ECF No. 18-2] at 141–42, and the Third DCA affirmed, *see Nembhard*, 299 So. 3d 475. Because we must defer to the state court's factual findings, Ground I fails on the merits.

### a. Background

On the morning of Nembhard's first day of trial, the parties discussed with the trial court the possibility of a plea agreement. Without any objection from Nembhard or his lawyer, the prosecutor said that "the [S]tate [had] never *formally* made" Nembhard a 15-year plea offer. Trial Transcript I [ECF No. 19-1] at 12:22–23 (emphasis added). But he clarified that he'd suggested "a number" to the defense, which he'd described as "an appropriate starting point" for negotiations:

> The Court: What was the appropriate starting point?
>
> The State: I said if the defendant wants to come back with 15, I would at least take that to career criminal. I don't know if that would be appropriate, but maybe a starting point to start negotiations.

*Id.* at 12:22–13:11. The trial court then sent the prosecutor, Nembhard, and his lawyer into the jury deliberation room to negotiate "the possibility of a plea offer[.]" *Id.* at 14:5–9. Before that discussion, the prosecutor again emphasized: "I *suggested* a number. I don't know if that's going to be appropriate for my chief assistant to do, but it's at least something they can start with[,] and I'll see what they say." *Id.* at 14:16–20 (emphasis added).

When they returned from the jury deliberation room, Nembhard agreed to "proceed to trial," but he commented that, because he "hadn't been given all of the evidence," he "really want[ed] to know what[] [was] going to happen if [he didn't] take the 15[.]" *Id.* at 18:16–23. After the State offered to show Nembhard "every piece of evidence [it] ha[d] on th[e] case if he want[ed] to make an informed

decision," the trial court gave Nembhard until the next day to decide if he wanted to negotiate. *Id.* at 19:6–20:13.

At the end of the first day, Nembhard was still undecided. The trial court reminded him:

> The Court: Your biggest concern right now is if you're found guilty, you're looking at a mandatory life sentence. You think about that when you review whatever evidence you want to review and tomorrow morning, if you want to negotiate, you tell me[,] and I will tell the State Attorney to get an offer for you. If I don't hear from you[,] I will assume that you no longer want to negotiate, or that you've decided not to; do you understand?
>
> Nembhard: I understand. When you say negotiate, like, okay, they offer me and then I tell them something else, is that negotiating?
>
> The Court: No, you need to discuss with your attorney if you want them to—if you want to talk to them about a number.

*Id.* at 185:18–186:9.

The next morning started with Nembhard's mother repeatedly begging him to "[t]ake the plea[.]" Trial Transcript II [ECF No. 19-2] at 4. Responding to Nembhard's mother's request, the trial court turned to him and said:

> The Court: The only reason she is reacting that way, and I'm asking you to think about it, is because you're so young. You have a constitutional right to go to trial and I don't want to make it appear as though I'm trying to talk you into a plea; I'm not. If you want a trial, you exercise your basic right, I promise you I will be fair. It's just that the stakes are so high that everyone is concerned that maybe you're not thinking about this. So if you tell me right now, "Judge, I've given it as much thought as I can," then that's fine.

*Id.* at 5:4–16. A few moments later, the trial court turned to Nembhard again:

> The Court: But listen, tell me right now that you've given this as much thought as you can, and I won't ask you again. "Judge, I thought about it as much as I can. My answer is still no. I wish to proceed," and I won't ask you again.

11

| Nembhard: | Your Honor, I honestly, I've done everything that I can you know? And I have a long battle ahead of me, you know, so. |
|---|---|
| The Court: | You want to go to trial? |
| Nembhard: | He just offered me 20, you know. Yesterday it was 15. Now, today it's 20, you know. |
| The Court: | That's the offer, sir. If you want to reject that offer and go to trial, please speak up. |
| Nembhard: | I guess, yes. |
| The Court: | You need to speak up. Do you want to reject that offer and go to trial? |
| Nembhard: | Yes, Your Honor. |

*Id.* at 6:21–7:15.

### b. Analysis

To succeed on his ineffective-assistance claim, Nembhard must show "both deficient performance and prejudice." *Clark v. Att'y Gen., Fla.*, 821 F.3d 1270, 1283 (11th Cir. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). In other words, Nembhard must establish "both that 'counsel's representation fell below an objective standard of reasonableness,' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Ibid.* "To establish prejudice in the context of a failed plea bargain, the petitioner must show a reasonable probability that: (1) the plea offer would have been presented to the court; (2) the court would have accepted its terms; and (3) the conviction or sentence under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Turbi v. Sec'y, Dep't of Corr.*, 800 F. App'x 773, 775 (11th Cir. 2020) (citing *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)).

Adopting the State's response to Nembhard's Rule 3.850 motion, the trial court made two factual findings: *one*, that the State "never made" a 15-year plea offer to Nembhard and instead had

12

suggested that number as "a starting point of possible negotiation"; and *two*, that, in any event, Nembhard "rejected any possibility of accepting" any such offer. Order Denying Motion for Postconviction Relief [ECF No. 18-2] at 141 (denying the motion "for the reasons set forth in the State's Response" and finding that the transcripts showed that "Nembhard rejected any possibility of accepting a 15 year plea, even if the State was inclined to accept it (and the State never said it would accept such an offer)"); *see also* State's Response [ECF No. 18-2] at 129 (observing that "[t]he prosecutor never extended an offer to [Nembhard]," that "the mere suggestion of a number was a starting point of a possible negotiation between [Nembhard] and the State," and that, "[e]ven if defense counsel had been ineffective, [Nembhard] . . . rejected the alleged offer on his own . . . in open court").

We must presume that the trial court's factual findings were correct unless Nembhard rebuts that presumption "with clear and convincing evidence." *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1289 (11th Cir. 2016); *see also* 28 U.S.C. § 2254(e) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). But the only evidence Nembhard has offered is his own sworn declaration—which he submitted for the first time in reply, *over seven years after* his conviction—in which he claims that the State made him a firm offer of 15 years. *See* Declaration of Oba Nembhard [ECF No. 29-1] ¶ 24 (swearing that "prosecutors gave [him] a firm offer of 15 years" on the first day of jury selection). But Nembhard's declaration doesn't come close to meeting the clear-and-convincing standard. *See, e.g.*, *Walker v. Sec'y, Fla. Dep't of Corr.*, 2017 WL 5069357, at *3 (11th Cir. Oct. 16, 2017) ("Other than his own testimony, Mr. Walker produced no evidence, much less clear and convincing evidence, that refuted the state court findings." (citing 28 U.S.C. § 2254(e)(1))); *Perez v. Rosario*, 459 F.3d 943, 950 (9th Cir. 2006) (finding that the petitioner's "unsupported statement, offered four years after the trial," wasn't "clear and convincing evidence" to

13

rebut the state court's findings); *Avila v. Quarterman*, 560 F.3d 299, 307 (5th Cir. 2009) ("This affidavit, which was not executed until long after the trial, does not constitute clear and convincing evidence sufficient to rebut the presumption of correctness afforded the state court's finding under § 2254(e)(1)." (citation omitted)).

But we don't really need the presumption to reject Nembhard's late and insufficient declaration because *both* of the state court's findings are fully supported by the transcripts. As the selections we block-quoted above make clear, on the first day of the trial, the State only *suggested* 15 years as a way for *the defense* to offer a high enough number to trigger negotiations. When those negotiations finally kicked off in earnest the next day, the offer was 20, not 15, years—as Nembhard himself admitted. And, in any event, Nembhard then knowingly and voluntarily rejected this offer— so he cannot now blame his lawyer for the consequences. Plus, because the State never extended Nembhard a 15-year plea offer—and since Nembhard expressly (and on the record) rejected that offer—the trial court was right to conclude that Nembhard "ultimately suffered no prejudice." Order Denying Motion for Postconviction Relief [ECF No. 18-2] at 141.

As we've intimated, none of this constitutes an "objectively unreasonable" application of *Strickland. See Price v. Dixon*, 2023 WL 3688458, at *10 (N.D. Fla. Mar. 10, 2023) (Frank, Mag. J.) ("Deferring to the state court's factual finding—that the State never actually made Price a plea offer— the state court's rejection of Price's ineffective assistance claim was a reasonable application of the Supreme Court's holdings in *Strickland*, *Lafler* and *Frye*."), *report and recommendation adopted*, 2023 WL 3687984 (N.D. Fla. May 26, 2023) (Rodgers, J.); *Hogan v. Sec'y, Fla. Dep't of Corr.*, 2018 WL 6304840, at *9 (M.D. Fla. Dec. 3, 2018) (Howard, J.) (presuming that the state court was right in finding that "the State never made a three-year plea offer," that the petitioner "would not have accepted any plea deal," and that he'd "failed to establish that the State would have accepted a three-year counter offer," and therefore concluding that the petitioner "[could not] demonstrate prejudice" (citations omitted)).

We therefore **DENY** Ground I.

## II.    Grounds II and IV

In Ground II, Nembhard claims that his lawyer acted ineffectively when he "fail[ed] to investigate [ ] and 'blanket' call half of [the] defense witness list." Am. Petition at 8. In Ground IV, Nembhard says that his lawyer "fail[ed] to investigate, interview, [and] locate alibi-witnesses prior to trial" and thus couldn't execute an "effective strategy" when the trial court gave him only 24 hours to "investigate the alibi-witnesses[ ] during trial[.]" *Id.* at 11.[5] Since both grounds concern his lawyer's alleged failure to investigate and call defense witnesses, we'll address them together.[6]

Although the Respondent argues that these grounds are procedurally defaulted, *see* Resp. at 28, 39–40, "a federal court may skip over the procedural-default analysis if a claim would fail on the merits in any event," which is what we'll do here,[7] *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir.

---

[5] Several of Nembhard's claims—like Grounds II and IV—press two different theories simultaneously: ineffective assistance of counsel and the denial of a fair trial, both under the Sixth and Fourteenth Amendments. But where, as here, the alleged error stems from counsel's performance, the two theories collapse into one. *See Herman v. Butterworth*, 744 F. Supp. 1128, 1136 (S.D. Fla. 1989) (Roettger, J.) ("The yardstick for measuring any claim of ineffective assistance of counsel is whether the counsel's conduct deprives the defendant of his or her constitutional right to a fair trial." (citing *Strickland*, 466 U.S. at 686)). That overlap makes sense, since a lawyer's ineffectiveness renders a trial fundamentally unfair, which is why *Strickland*'s "error-and-prejudice test . . . measures substantially the same elements required to establish a denial of due process." *Basilio v. Att'y Gen. of U.S.*, 439 F. App'x 146, 149 (3d Cir. 2011) (quoting *Fadiga v. Att'y Gen.*, 488 F.3d 142, 157 (3d Cir. 2007)). By contrast, where Nembhard alleges trial-court error apart from his lawyer's deficient conduct, we'll treat his fair-trial claims separately.

[6] In reply, Nembhard says that it would be wrong to "assume[ ]" that Ground II "is the same claim raised in Ground IV[.]" Reply [ECF No. 29] at 19. He contends that "Ground IV asserts ineffectiveness based on failure to interview or investigate the alibi witnesses specifically," while Ground II "asserts a more general ineffectiveness claim based on failure to prepare for trial and failure to investigate." *Id.* at 19–20. But both grounds, as pled, challenge counsel's handling of potential defense witnesses. In Ground II, after all, he faults his lawyer for not investigating and calling "half" the witness list and, instead, writing "same as State" on the "discovery form." Am. Petition at 8. And Ground IV unambiguously challenges his lawyer's alleged failure to investigate alibi witnesses before trial.

[7] It's not clear to us that Grounds II and IV are procedurally defaulted. They *would* be if the state court had rejected them on "independent and adequate" state procedural grounds. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an "independent and adequate" state ground when (1) the state court "clearly and expressly" says that it's relying on state

2020); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### a.  Background

Nembhard's lawyer had "six witnesses on [his] list[.]" Trial Transcript VI [ECF No. 19-6] at 105:9. Three of them, the State agreed, would "have said under oath that [Nembhard] was with them at the time that the crime happened." *Id.* at 119:19–21. By the middle of trial, however, "no one ha[d] spoken to at least four of the witnesses," and none of them had appeared to testify for Nembhard. *Id.* at 125:22–24. At trial, the state court asked Nembhard several times whether he wanted these six defense witnesses subpoenaed. *Id.* at 114–30. Although Nembhard refused each of these requests, the court ordered them subpoenaed anyway. Here's how that all went down.

After reviewing Nembhard's witness list, the trial court asked Nembhard point blank:

| | |
|---|---|
| The Court: | Do you want your attorney to subpoena these people to require their presence here before the Court? |
| Nembhard: | No. |
| The Court: | No? |
| Nembhard: | No. |

procedural rules to resolve the federal claim "without reaching the merits of that claim"; (2) its decision "rest[s] solidly" on state-law grounds and isn't "intertwined with an interpretation of federal law"; and (3) the state rule is "adequate," *i.e.*, "not applied in an arbitrary or unprecedented fashion." *Ibid.* In Nembhard's Rule 3.850 proceedings, he only raised the claims in Grounds II–IV in his second, "successive" Rule 3.850 motion—and not in his initial motion. *See* Am. Petition at 8 (explaining that he'd raised Ground Two in his "[s]uccessive 3.850 motion"); *id.* at 10 (same as to Ground Three); *id.* at 11 (same as to Ground Four). Since Nembhard didn't sufficiently explain why he hadn't raised those claims in his initial Rule 3.850 motion, the state court appeared to treat his claims as procedurally barred under Florida law, noting that it "can deny the Motion on th[at] basis alone." Order Denying Successive Post-Conviction Motion [ECF No. 18-3] at 251 n.1. Even so, the state court explained that it "[n]evertheless" had discretion to consider Nembhard's successive motion, and it "decline[d] to exercise [that] discretion" because Nembhard couldn't show *Strickland* prejudice in any event. *Id.* at 252. Since the state court thus arguably reached the merits of these federal claims, we can't say for sure that the state court "clearly and expressly" relied *solely* on state procedural grounds.

| | |
|---|---|
| The Court: | Are you sure? |

[ . . . ]

| | |
|---|---|
| The Court: | But I want you to make the decision based on what you know about the witnesses and their testimony. This decision is yours and yours alone; do you understand that? |
| Nembhard: | Yes, ma'am. |

[ . . . ]

| | |
|---|---|
| The Court: | Do you want me to order your lawyer to subpoena the witnesses? |
| Nembhard: | No. |

*Id.* at 114–16.

Unconvinced that Nembhard was making the right decision, the trial court reraised the issue directly:

| | |
|---|---|
| The Court: | I'm going to reconvene and have the subpoenas go out because this is not—I'm explaining to you exactly what can be done. This decision is yours and yours alone. I do not want you to rely at this time on what your attorney has told you. I want you to understand that on at least one prior occasion these two or three witnesses have said under oath that you were with them at the time that the crime happened. . . . What do you want to do, sir? |
| Nembhard: | It's in my best interest to continue. |

[ . . . ]

| | |
|---|---|
| The Court: | Is this your decision? |
| Nembhard: | Yes, ma'am. |
| The Court: | Your decision alone, sir? |
| Nembhard: | Yes, ma'am. |

*Id.* at 157–58.

The trial court then asked Nembhard's lawyer why he believed it was "in the best interest of [his] client to go forward . . . without those witnesses." *Id.* at 120:11–14. Nembhard's lawyer explained that he'd feared some of the witnesses wouldn't be credible and would therefore "damage the case instead of help the case." *Id.* at 124:2. After a brief recess, the trial court asked Nembhard one more time whether he wanted the witnesses subpoenaed:

> The Court:    Have you had enough time to speak to your lawyer?
>
> Nembhard:    Yes, ma'am.
>
> The Court:    And what is your decision?
>
> Nembhard:    We're going to go ahead and proceed without the witnesses.

*Id.* at 125:16–21.

The trial court ordered an investigator to subpoena the witnesses anyway, and it instructed Nembhard's lawyer to "get a statement from each and every one of them" the following Monday and then decide, "as a matter of strategy," whether the witnesses should be called to testify. *Id.* at 126:17–24. The trial court then instructed Nembhard's lawyer as follows:

> The Court:    Explain to [Nembhard] why I'm ruling this way. It's in an abundance of caution for his own good. I don't want there ever to be a doubt in anyone's mind that not enough was done to protect your rights and to make sure that you got a fair trial. I want to make sure that everything that could've been done was done to make sure that you get every opportunity to present your case, sir.
>
> Counsel:    Do you understand?
>
> Nembhard:    Yes.

*Id.* at 130:8–18.

Five out of the six witnesses were successfully subpoenaed—Tian Morris, Gabriel Acevedo, Tavaris Brockington, D'Angelo Brockington, and Maurice Henry. *See* Trial Transcript VII [ECF No.

19-7] at 6–11. Each of them provided statements to Nembhard's lawyer. *See id.* at 11:18–20 ("[The Court:] So you know what these people would have said? [Counsel:] Yes."). Nembhard and his lawyer agreed to call only one of them—Tavaris Brockington—who later "walked away from the investigator" and could not be located. *Id.* at 30:8–9. Nembhard agreed not to "issue a writ of bodily attachment" for that witness. *Id.* at 31. None of the other witnesses appeared.

### b. Analysis

Counsel's failure to "*call* certain witnesses" generally isn't "sufficient grounds for a Sixth Amendment claim." *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981) (emphasis added). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [we] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995); *see also United States v. Long*, 674 F.2d 848, 855 (11th Cir. 1982) ("This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses."). True, Nembhard *also* claims that his lawyer should've *investigated* those witnesses *before* trial, and we cannot assume that his lawyer acted "strategically in not calling a witness when the allegation is that [he] never investigated what th[ose] witness[es] would have to say." *Olvera v. Gomez*, 2 F.4th 659, 675 (7th Cir. 2021).

Still, we think these claims fail for three obvious reasons. *First*, Nembhard can't credibly claim that his lawyer was ineffective when Nembhard *himself* agreed *not* to call those witnesses. *See Acuna v. United States*, 494 F. App'x 961, 962–63 (11th Cir. 2012) ("The Court has stated that ineffective assistance does not exist under *Strickland* where the defendant ultimately concurred in his counsel's tactical decision or strategy. Acuna essentially waived his right to contest his counsel's ineffectiveness by agreeing with that choice at trial."). Plus, when the state court ordered those witnesses subpoenaed *anyway*, Nembhard heard what five of the six had to say, and he *then* agreed not to call four of them. Nembhard cannot take back the decisions he made to the judge on the record at the trial. *See Blackledge*

*v. Allison*, 431 U.S. 63, 73–74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

*Second*, even if he could show deficient performance, Nembhard cannot establish prejudice. To do that, he must plead "facts showing" that his lawyer's performance "rendered his trial fundamentally unfair." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980); *see also Lemus v. Dep't of Corr.*, 2021 WL 8743230, at *1 (11th Cir. Dec. 29, 2021) (recognizing that "a petitioner faces a particularly heavy burden to establish prejudice when they claim ineffective assistance for failing to call a witness" (citing *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006))). But, in his Amended Petition, Nembhard never pled *any* facts about what the testimony of those witnesses would have been or how they would've helped his defense. *See generally* Am. Petition; *see also D'Amico v. Sec'y of Dep't of Corr.*, 2014 WL 1248071, at *15 (M.D. Fla. Mar. 26, 2014) (Whittemore, J.) (noting that "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense" to "prevail on an ineffective assistance claim based on counsel's failure to call a witness" (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009))); *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof.").

In his Reply, Nembhard attached the declarations of two potential witnesses who've sworn that they would've testified "in Nembhard's defense" had his lawyer reached out to them sooner. *See* Declaration of Diangalo Brockington [ECF No. 29-2] ¶¶ 13–15 (attesting that Nembhard's "lawyer never contacted me to ask [him] to testify or to talk to me about testifying," that, "had [he] been contacted about the case, [he] would have testified in [Nembhard]'s defense," and that he "did not receive the message that [Nembhard]'s investigator was looking for [him] until it was too late"); Declaration of Maurice Henry [ECF No. 29-3] ¶¶ 6–9 (swearing that he "told [Nembhard] that [he]

20

would testify in his defense but his lawyer never contacted [him]," that he "did not learn that [he] had been subpoenaed to appear in [Nembhard]'s trial until after the trial was over," and that, "[i]f [he] had received the message, [he] would have testified in [Nembhard]'s defense").

Two problems with this. *One*, we "will not consider evidence submitted for the first time with a reply memorandum." *Sunteck Transp. Co., LLC v. Grand Slam Transp. Servs., Inc.*, 2021 WL 2592392, at *6 n.10 (S.D. Fla. Mar. 30, 2021) (Cooke, J.) (citing *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 901–02 (11th Cir. 2019) ("When faced with a reply brief that offers new evidence, we, like the Tenth Circuit, conclude that the district court has two permissible courses of action. It can either (1) permit the nonmoving party to file a sur-reply or (2) refrain from relying on any new material contained in the reply brief.")). *Two*, Brockington and Henry were ultimately subpoenaed during trial and gave their statements to the defense—but Nembhard chose not to call them. Having made that choice when these two witnesses *were* available, Nembhard cannot now claim that his trial was fundamentally unfair because of their absence.

*Third*, Nembhard hasn't shown that the trial court's resolution of these two grounds "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court." *Allen v. Sec'y, Dep't of Corr.*, 767 F. App'x 786, 789 (11th Cir. 2019) (quoting 28 U.S.C. § 2254(d)(1), (2)). After evaluating the testimony the alibi witnesses would have provided, the trial court found that Nembhard hadn't been prejudiced under *Strickland*:

> Given the substantial strength of the State's case, Nembhard would not be entitled to relief pursuant to the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984). The State had two direct eyewitnesses who identified Nembhard as the robber who shot one of them. In addition, they had the driver of the car that transported Nembhard to and from the scene of the crime. Quibbling over the precise height of the robber/shooter, in light of this evidence, would not lead this Court to conclude that Nembhard would have been acquitted if trial counsel had performed better. Likewise, the shakiness, reluctance, and general nature of the testimony the alleged alibi witnesses would have provided, would also not have been likely to result in an acquittal—

21

notwithstanding trial counsel's apparently deficient performance with regards to the alibi witnesses.

Order Denying Successive Post-Conviction Motion [ECF No. 18-3] at 252.

Because overwhelming evidence proved Nembhard's guilt, in short, "the [state] court did not unreasonably apply *Strickland*'s prejudice prong." *Hernandez v. Sec'y, Dep't of Corr.*, 2023 WL 1781564, at *7 (M.D. Fla. Feb. 6, 2023) (Barber, J.); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559–60 (11th Cir. 1991) ("[B]ecause the evidence against Tejada is overwhelming, Tejada has not demonstrated that the alleged errors, if true, would have so prejudiced his defense that 'there [would be] a reasonable probability that . . . the result of the proceeding would have been different' if his counsel had not committed the alleged errors." (citing *Strickland*, 466 U.S. at 694)); *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 563–64 (11th Cir. 2009) (affirming the denial of habeas relief where an alibi witness's testimony wouldn't "have likely changed the result of trial" given the compelling evidence against the petitioner); *Williams v. United States*, 2012 WL 13118220, at *20 (M.D. Fla. May 16, 2012) (Fawsett, J.) ("Finally, given the compelling evidence of Petitioner's guilt (including eyewitnesses who testified to seeing Petitioner pull the [g]un from his waistband or pocket), it is not reasonable to conclude that the result of the trial would have been different if Okoro and Montgomery had testified.").

We therefore **DENY** Grounds II and IV.

### III.     Ground III

In Ground III, Nembhard challenges his lawyer's failure to disclose to him, before trial, "[an] [a]lleged confession statement made by [Nembhard] and [v]ideo/audio evidence." Am. Petition at 9. Since Nembhard doesn't tell us anything else about this claim, we find that Ground III fails to properly state a claim for relief.

Under the heightened pleading standard that applies in habeas cases, a petitioner's "allegations must be factual and specific," and "[c]onclusory allegations are simply not enough to warrant a hearing." *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (citations omitted); *see*

22

*also Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (noting that habeas petitions call for "fact pleading" as opposed to the "notice pleading" contemplated under Federal Rule of Civil Procedure 8(a)).

In his Amended Petition, Nembhard obliquely references an "alleged confession statement" and "video/audio evidence" without telling us *what* the confession entailed or describing what the video or audio evidence showed. Am. Petition at 9. He also doesn't give us *any* facts about what he would've done had he known about this evidence or explain how the outcome of his proceedings would have been different. Ground III fails for this reason alone. *See, e.g.*, *Barnes v. United States*, 2018 WL 2770171, at *31 (S.D. Fla. Mar. 28, 2018) (White, Mag. J.) ("[M]ovant fails to allege any facts to support his claim that government witnesses were coached by members of the audience. As such, his claim that counsel was ineffective for failing to raise these issues is bare and conclusory. Based on the foregoing, [M]ovant's claim [] is insufficiently pled and should be denied as it warrants no habeas corpus relief."), *report and recommendation adopted*, 2018 WL 2770125 (S.D. Fla. June 8, 2018) (Scola, J.).[8]

Nembhard's deficient pleading of Ground III prevented full briefing on the issue. Relying on Nembhard's statements from his state postconviction motion, the Respondent thought that Nembhard was claiming his lawyer "was ineffective for failing to object to what he deem[ed] to be testimonial hearsay evidence: [a] surveillance video and Detective Hatzis's testimony." Resp. at 35 (citing Successive Post-Conviction Relief Motion [ECF No. 18-3] at 141, 151 (Nembhard arguing that his "right to confront the evidence against" him was violated by his lawyer's "failure to disclose [the] oral-substance of de[tective] Hatzis['s] statement" and his "failure to disclose video and audio

---

[8] *See also Seward v. Sec'y, Dep't of Corr.*, 2018 WL 3639853, at *9 (N.D. Fla. May 29, 2018) (Jones, Mag. J.) ("Nothing in ground five suggests that Petitioner's rights were somehow violated under federal law or the Constitution and it is nothing more than a vague, conclusory statement alleging no facts or reasons in support thereof. Ground five should therefore be denied."), *report and recommendation adopted*, 2018 WL 3636558 (N.D. Fla. July 30, 2018) (Vinson, J.).

evidence" and relying on *Crawford v. Washington*, 541 U.S. 36 (2004))).[9] So, the Respondent understandably limited its briefing to the question posed by the Supreme Court's decision in *Crawford*: whether the evidence was testimonial. *See* Resp. at 34–38. But, in his Reply, Nembhard argues something completely different, saying nothing about *Crawford* or ever mentioning any testimonial evidence. Instead, he now challenges his lawyer's "fail[ure] to adequately communicate with [him] about his defense ahead of trial" generally, *id.* at 23, and he argues for the first time that, by "not communicating" with him, his lawyer "missed an opportunity to exclude evidence obtained in violation of [Nembhard's] *Miranda*[10] rights," *id.* at 25. None of this appeared in his Amended Petition.

This is precisely why we don't entertain arguments a petitioner advances for the first time in reply. *See Mercado v. Sec'y, Fla. Dep't of Corr.*, 2022 WL 2103057, at *15 (M.D. Fla. Feb. 7, 2022) (Byron, J.) ("Petitioner cannot raise new claims in his Reply." (citing *United States v. Krasnow*, 484 F. App'x 427, 429 (11th Cir. 2012))). And we won't let Nembhard file a second amended petition because Judge Martinez already gave him an opportunity to replead this ground properly and to "provid[e] sufficient factual support for the claims asserted[.]" Order Re Non-Compliance and for Amended Petition [ECF No. 6] at 3. The law doesn't require us to give him a third chance. *See, e.g.*, *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("Because Cornelius already had been given an opportunity to correct his pleadings, the judge was not required to give him another chance."); *Birdette v. Saxon Mortg.*, 502 F. App'x 839, 841 (11th Cir. 2012) ("[T]he Birdettes . . . were specifically informed as to how to replead their complaint to state a claim, and warned that a failure to comply with the court's order would result in dismissal, and they still failed to cure the deficiencies. As such, we conclude that dismissal . . . under Rule 41(b) was not an abuse of discretion in this case.").

---

[9] In *Crawford v. Washington*, 541 U.S. 36, 68–69 (2004), the Supreme Court held that, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."

[10] *Miranda v. Arizona*, 384 U.S. 436 (1966).

We therefore **DENY** Ground III.

### IV.      Ground V

In Ground V, Nembhard argues that his attempted felony-murder conviction violated the Fourteenth Amendment because the amended information failed to "allege [an] essential element of the crime." Am. Petition at 13. This ground is procedurally defaulted.

Habeas petitioners "generally cannot raise claims in federal court if those claims were not first exhausted in state court." *McNair*, 416 F.3d at 1302. When raising federal claims in state court, habeas petitioners must "make the state courts aware that the claims asserted do, in fact, raise federal constitutional issues." *Ward*, 592 F.3d at 1156 (citations omitted). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). So, "to exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief'"; they "must additionally articulate the [federal] constitutional theory serving as the basis for relief." *Henry v. Dep't of Corr.*, 197 F.3d 1361, 1366 (11th Cir. 1999) (quoting *Gray v. Netherland*, 518 U.S. 152, 163 (1996)); *see also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) ("[A] petitioner with a claim that could arise under either state or federal law must *clearly indicate* to the state courts that he intends to bring a federal claim." (emphasis added)).

Nembhard claims to have raised Ground V on direct appeal. *See* Am. Petition at 13. But our review of that appeal shows that Nembhard failed to "make the state court[ ] aware that the claim[ ] asserted . . . raise[d] [a] federal constitutional issue[ ]." *Ward*, 592 F.3d at 1156. In his initial brief in that appeal, Nembhard argued that his attempted felony-murder conviction was unlawful because "the information failed to allege an intentional act that [was] not an essential element of the underlying felony" and because "the [S]tate used the same act, the shooting of David Montesino, to prove both

the attempted felony murder and the underlying robbery offense."[11] Initial Brief [ECF No. 18-1] at 115. In doing so, Nembhard cited only *Florida* statutes and *Florida* cases. *See id.* at 104–20. "[I]ndeed, [Nembhard] did not even *mention* the word 'federal' or refer to federal law in any other way." *Preston*, 785 F.3d at 451 (emphasis added). Unsurprisingly, both the State's answer brief[12] and the Third DCA's opinion on this issue relied *exclusively* on Florida law. *See* Answer Brief [ECF No. 18-1] at 126–61; *see also Newbhard*, 237 So. 3d at 1075–80.

Nembhard, in sum, failed to "fairly present" Ground V in federal-law terms to the Third DCA, which means that his claim is procedurally defaulted. *Ward*, 592 F.3d at 1156; *see also McNair*, 416 F.3d at 1302 (holding that "the district court properly held that McNair had procedurally defaulted his Sixth Amendment claim"—which was that "extraneous evidence deprived him of his right to a fair trial"—because he'd presented the argument in the trial and appellate courts "solely under state law principles"); *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) ("Neither the direct appeal, nor the response to the state's objections to the motion to interview jurors, made reference to the federal constitutional issues raised here. None of the cases cited in either the direct appeal or the incorporated documents discussed the Federal Constitution. The district court did not err in concluding that these

---

[11] Florida's attempted-felony murder statute provides that "[a]ny person who perpetrates or attempts to perpetrate any felony enumerated in [§] 782.04(3) and who commits, aids, or abets an intentional act that is *not an essential element of the felony* and that could, but does not, cause the death of another commits a felony of the first degree[.]" FLA. STAT. § 782.051(1) (emphasis added). In Nembhard's case, the predicate felony was the robbery. His argument in the Third DCA, then, was that the State improperly used the shooting—the intentional act that's essential to the robbery charge—to *separately* prove the attempted felony-murder charge, which (he argued) couldn't support his attempted felony-murder conviction under § 782.051(1).

[12] The State mentioned just one U.S. Supreme Court case in its answer brief: *Hirabayashi v. United States*, 320 U.S. 81 (1943). But it did so only because *Hirabayashi* was cited by the Florida Supreme Court in *Jordan v. State*, 143 So. 3d 335 (Fla. 2014), which the State relied on to argue that "an appellate court need not address challenges to every conviction where another conviction with a concurrent sentence of equal or greater length has been affirmed on appeal." Answer Brief [ECF No. 18-1] at 159 (cleaned up). That point was unrelated to the merits of Nembhard's state-law claims.

claims were procedurally defaulted."); *see also Preston*, 785 F.3d at 462 ("[The petitioner's] failure to exhaust means that his federal claim has been procedurally defaulted.").

We therefore **DENY** Ground V.

**V.      Ground VI**

In Ground VI, Nembhard argues that he was denied due process because the trial court failed to "declar[e] a mistrial when [it] observed [j]urors commenting amongst each other during trial." Am. Petition at 13. The Respondent concedes that Ground VI is exhausted because Nembhard argued in his IAAC Petition that his appellate lawyer was ineffective for not raising this claim. *See* Resp. at 44; *see also* IAAC Petition at 23 ("Had counsel argued this issue[,] the outcome of the appeal process would have been different, [and] the appellant would have been granted a new trial[ ] with a new jury."). The Third DCA denied that claim, *see Nembhard*, 302 So. 3d 874, and so do we.

The Respondent seems to construe Ground VI as an ineffective-assistance claim rather than a trial-error claim. *See* Resp. at 44–48 (referring to Ground VI as "an ineffective assistance of appellate counsel claim" and applying *Strickland*). However we construe it, though, Nembhard isn't entitled to relief on Ground VI.

**a. Background**

During the cross-examination of a state witness, some of the jurors began talking with each other after the presentation of video evidence—chatter that prompted the trial court to say: "I'm going to ask the jurors to please not comment and be quiet while we're taking testimony." Trial Transcript V [ECF No. 19-5] at 174:21–23.[13] Nembhard's lawyer didn't object, and he also didn't ask the trial court to investigate the issue further or to modify its instruction. *See id.* at 173–75. At the end of that

---

[13] In his IAAC Petition, Nembhard claimed that he'd heard certain jurors say specific things, ostensibly about the recently shown video. *See, e.g.*, IAAC Petition at 19 ("[O]ne juror asked another juror, '[W]as that the same clothing or different[?]' [and] another juror responded[,] 'I can't tell[.] It was too fast[.]' Then anothe[r] juror (male) intervened and said[,] '[I]t's nothing[,] it[']s the same[.]'" (cleaned up)).

day, the trial court instructed the jurors as follows:

> I'd like to remind you not to discuss this case with anyone, please, at
> all. And certainly not to discuss it amongst yourselves. It might be very
> tempting as you're walking out to partner up with someone and talk
> about what you heard. But you can't. Please don't do that. Because I
> would have to declare a mistrial and start all over again with a different
> jury. Okay?

*Id.* at 196:12–20.

### b. Analysis

We'll treat Ground VI as advancing *both* a trial-error claim *and* an ineffective-assistance-of-appellate-counsel claim, and we'll address each in turn.

*The Trial-Error Claim*. Nembhard can't show that the trial court violated his due-process rights. To be sure, "[j]uror impartiality is endangered when jurors engage in deliberations before they have heard both sides' evidence and the judge's instructions on the law of the case." *United States v. Bradley*, 644 F.3d 1213, 1276 (11th Cir. 2011) (citation omitted). But "because of [the trial court's] familiarity with the jurors and the time and place of the conduct in question," it retains "broad discretion in determining how best to address potential juror misconduct," which "extends to the initial decision whether to interrogate the juror(s) accused of improper communication." *Id.* at 1276–77.

In our case, this means the trial court had the discretion to admonish the jurors for chatting—rather than investigate the full scope of their discussions, especially since even Nembhard's recitation of their momentary discussions sounds innocuous and perfunctory. That discretion, the Eleventh Circuit has said, was "at its zenith" in the circumstances presented here because the "alleged misconduct relate[d] to statements made by the jurors themselves, and not from media publicity or other outside influences." *Ibid.* (recognizing a distinction "between the dangers of improper communication amongst jurors and communications between jurors and outsiders"). Plus, as we've hinted, nothing in our record even suggests that the jurors were, in fact, discussing the video, and

28

"'additional investigation might have over-emphasized' the issue." *United States v. Signore*, 780 F. App'x 685, 700–01 (11th Cir. 2019) (quoting *United States v. Harris*, 908 F.2d 728, 734 (11th Cir. 1990)).

Nembhard hasn't otherwise explained how the trial court abused its discretion, and he doesn't identify any clearly established federal law under which his due-process rights might have been violated. *See generally* Am. Petition; Reply; *see also Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation." (citing *Delap v. Dugger*, 890 F.2d 285, 311 (11th Cir. 1989))); *see also Comstock v. Humphries*, 786 F.3d 701, 707 (9th Cir. 2015) (noting that a § 2254 petitioner "carries the burden of proof" to show "that the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'" (quoting *White v. Woodall*, 572 U.S. 415, 420 (2014))). Since Nembhard can't show a denial of due process, he's not entitled to relief on his trial-error claim.

**The Ineffective-Assistance Claim**. To the extent that Nembhard also raises an ineffective-assistance-of-appellate-counsel claim here, he must satisfy *Strickland*'s deficient-performance and prejudice prongs. *See Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*."). He's failed to meet that standard here.

When the jurors were speaking to one another, Nembhard's lawyer never lodged an objection. "Under Florida law, an unpreserved issue cannot be raised on direct appeal."[14] *Smith v. Inch*, 2020

---

[14] It's true that Florida law permits an unpreserved issue to be raised on appeal where there's fundamental error—but when the Third DCA denied Nembhard's petition alleging ineffective assistance of appellate counsel, it "determined, albeit implicitly," that there had been no fundamental error, and we "must defer to the Florida court's underlying determinations of state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297–98 (11th Cir. 2017). Of course, another way to interpret the Third DCA's unelaborated denial of Nembhard's petition is that, even if it *had been* fundamental error for the trial court not to further address the jurors' misconduct, Nembhard's appellate lawyer wasn't ineffective for not raising the issue on appeal. But we can't interpret the Third DCA's ruling that way

WL 6385016, at *4 (S.D. Fla. June 29, 2020) (Reid, Mag. J.) (citing *Williams v. State*, 896 So. 2d 812, 812 (Fla. 4th DCA 2005)), *report and recommendation adopted*, 2020 WL 6381820 (S.D. Fla. Oct. 30, 2020) (Middlebrooks, J.). In other words, Nembhard's appellate lawyer couldn't have been deficient for failing to raise an unpreserved issue because the argument had no reasonable probability of success on appeal. *See Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument." (citing *Card v. State*, 497 So. 2d 1169, 1174 (Fla. 1986))); *Diaz v. United States*, 2018 WL 10150923, at *4 (S.D. Fla. Jan. 2, 2018) (White, Mag. J.) ("[O]nly if it is concluded that [the omitted claim] would have had a reasonable probability of success, then can [appellate] counsel's performance be deemed necessarily prejudicial." (citations omitted)), *report and recommendation adopted*, 2018 WL 10150910 (S.D. Fla. Jan. 30, 2018) (Altonaga, J.). Since he cannot show that his appellate lawyer was constitutionally ineffective, we **DENY** Ground VI.

## VI.   Ground VII

In Ground VII, Nembhard claims that he was denied a fair trial when the trial court "failed to instruct the jury to disregard" the prosecutor's "highly inflammatory . . . remark[ ] that [he] was a felon," and that both his trial and appellate lawyers were constitutionally ineffective for failing to raise this issue in state court. Am. Petition at 13–14. The Respondent concedes that this ground is exhausted. *See* Resp. at 48. Still, Ground VII fails on the merits.

---

because that "*would* have been contrary to or an unreasonable application of . . . *Strickland* and its progeny." *Id.* at 1298 (emphasis added). And we're required to "choose the interpretation of the [Third DCA's] decision that is consistent with the state court knowing and correctly applying federal law, including ineffective assistance of counsel law." *Id.* at 1299. Applied here, this commonsense rule requires us to assume that the Third DCA found any error *not* fundamental.

### a. Background

During closing arguments, a prosecutor called Nembhard a "felon" in passing. *See* Trial Transcript VII [ECF No. 19-7] at 42:16–19 ("[State:] Mr. Montecino didn't want to give up his chain. It had sentimental value, it had monetary value[,] and he didn't want to let that *felon* take away his property." (emphasis added)). Nembhard's lawyer didn't object to the prosecutor's "felon" remark, and the trial court didn't comment on it, either. *See id.* at 42–46. And Nembhard's appellate lawyer didn't raise the issue on direct appeal. *See* Initial Brief [ECF No. 18-1] at 107–21. Although Nembhard asserted this claim in state court, *see* IAAC Petition at 26 ("The defendant was deprived of the right to a fair and just trial, when the courts allowed the jurors to consider the defendant a felon without instructions to disregard the remark made by the prosecutor[.] Appella[te] counsel['s] failure to argue on direct appeal the plain error on the face of the record deprived the defendant of [ ] review[.]"), the Third DCA rejected it, *see Nembhard*, 302 So. 3d 874. We'll do the same.

### b. Analysis

*The Trial-Error Claim*. To prevail on a claim of prosecutorial misconduct, Nembhard "must establish that the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1291 (11th Cir. 2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). In other words, Nembhard must show that the remark rendered the entire trial "fundamentally unfair." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642–45 (1974). When we evaluate this sort of claim, "the totality of the circumstances are to be considered in the context of the entire trial." *Lucas v. Inch*, 2019 WL 5017431, at *12 (S.D. Fla. July 23, 2019) (Reid, Mag. J.) (citing *Davis v. Zant*, 36 F.3d 1538, 1551 (11th Cir. 1983)), *report and recommendation adopted*, 2019 WL 4954623 (S.D. Fla. Oct. 8, 2019) (Bloom, J.). "Such a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1988). In

31

making this assessment, we can consider "the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused," "whether they are isolated or extensive," "whether they were deliberately or accidentally placed before the jury," and "the strength of the competent proof to establish the guilt of the accused." *Davis*, 36 F.3d at 1549.

For three reasons, Nembhard can't establish a "reasonable probability" that the trial's outcome would have been different. *First*, "immediately before closing argument, the trial court clearly and correctly instructed the jury that what the lawyers said was not evidence." *Lucas*, 2019 WL 5017431, at *12; *see also ibid.* ("It is generally presumed that jurors follow their instructions." (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987))); *see* Trial Transcript VII [ECF No. 19-7] at 39:10–11 (instructing the jurors to "[r]emember [that] what the lawyers say is not evidence"). And it's a well-settled rule in our Circuit that "improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case can be considered." *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990). Since we presume that the jurors followed their instructions, we do not believe that the "felon" remark affected the verdict. *See, e.g.*, *United States v. Simpkins*, 240 F. App'x 334, 343 (11th Cir. 2007) (finding no reasonable probability that the outcome would have been different where the trial court "limited the effect of any comments by instructing the jury that the statements of the attorneys were not evidence").

*Second*, as we said in addressing Grounds II and IV, the evidence of Nembhard's guilt was overwhelming. Indeed, Nembhard admitted to Hatch that he'd fired a "warning shot," and several eyewitnesses identified Nembhard as the perpetrator. Since Nembhard hasn't shown any reasonable probability of a different result given this overwhelming evidence, "it is apparent that the prosecutor's statement[ ] w[as], at worst, no more than harmless error." *Lucas*, 2019 WL 5017431, at *12; *see also Welch v. Sec'y, Dep't of Corr.*, 2017 WL 6765233, at *2 (11th Cir. June 8, 2017) (finding that the petitioner "failed to establish that . . . there was a reasonable probability that the outcome would have been

different" because there was "overwhelming evidence of [his] guilt, including eyewitness testimony from the two victims, both of whom identified [the petitioner] as one of the perpetrators").

*Third*, the prosecutor's remark was "so isolated that [we] cannot say that [it] permeated the entire trial." *Cowan v. United States*, 2017 WL 1386804, at \*6 (M.D. Fla. Apr. 18, 2017) (Corrigan, J.) (citing *United States v. Bergman*, 852 F.3d 1046, 1070 (11th Cir. Mar. 24, 2017)). It was, after all, just a passing remark that appeared only once in closing argument. *See, e.g.*, *Suri v. McNeil*, 2010 WL 1521340, at \*7 (S.D. Fla. Mar. 8, 2010) (White, Mag. J.) (finding that the "prosecutor's reference to Suri as a 'child abuser,' 'child molester' and 'pedophile' were improper . . . . [but] were not so prejudicial as to vitiate the fairness of the entire trial" (citation omitted)), *report and recommendation adopted*, 2010 WL 1524418 (S.D. Fla. Apr. 14, 2010) (Lenard, J.). We, in short, cannot say "that without the remark[ ] there is a reasonable probability the jury would have acquitted" Nembhard. *Cowan*, 2017 WL 1386804, at \*6 (citing *United States v. O'Keefe*, 461 F.3d 1338, 1350 (11th Cir. 2006)).

**The Ineffective-Assistance Claims**. Nembhard's ineffective-assistance claims fail, too. For one thing, Nembhard can't show that he was prejudiced by his *trial* lawyer's failure to object to the prosecutor's "felon" comment since, as we've explained, he hasn't shown a reasonable probability that the trial's outcome would have been different without that comment. *See Strickland*, 466 U.S. at 694 (noting that "prejudice" is established when there's a "reasonable probability" that the outcome would have been different absent the lawyer's deficient performance); *Mims v. Sec'y, Dep't of Corr.*, 2008 WL 4710768, at \*6 (M.D. Fla. Oct. 23, 2008) (Presnell, J.) (finding that the "[p]etitioner [couldn't] demonstrate he suffered any prejudice from counsel's failure to question [a witness]" because "the victim and another witness unequivocally identified [the] [p]etitioner as the perpetrator"). For another, as we explained in denying Ground VI, Nembhard's appellate lawyer "could not be ineffective for failing to raise an unpreserved issue." *Smith*, 2020 WL 6385016, at \*4.

Nembhard, in short, has failed to show that the Third DCA's denial of this claim constituted an unreasonable application of federal law. We therefore **DENY** Ground VII.

## VII.   Ground VIII

In Ground VIII, Nembhard claims that he was denied a fair trial and effective assistance of appellate counsel when the trial court "allowed the [p]rosecution to violate . . . [the] rule of sequestration" by "allow[ing] the[ir] witness/victims in the courtroom prior to the[ir] testimony," and when his appellate counsel "fail[ed] to raise this claim on direct appeal." Am. Petition at 14. Nembhard doesn't elaborate on this claim further. But, in his state habeas petition, he argued that these alleged violations occurred when two of the State's witnesses were allowed to see Nembhard in the courtroom before identifying him from the stand. *See* IAAC Petition [ECF No. 18-3] at 38. The Respondent again concedes that this claim is exhausted. *See* Resp. at 51. So, we'll address the merits.

### a.   Background

At trial, before Janette Garcia was set to testify about what she saw, she entered the courtroom during a recess when Nembhard was present. *See* Trial Transcript IV [ECF No. 19-4] at 121–23. Nembhard's trial lawyer objected under Florida's rule of sequestration,[15] arguing that Nembhard was prejudiced because Garcia "ha[d] an opportunity to see him and . . . clarify identification" before testifying. *Id.* at 123:23–24. The trial court overruled the objection, finding that, "as a victim," Garcia had the right to "be in the courtroom . . . every time the case is called." *Id.* at 124:10–12. After noting that Garcia had already made "an out of court identification . . . three days after the incident," *id.* at 124:20–22—and because the State explained that Garcia hadn't been asked "if she saw" Nembhard

---

[15] Florida's rule of sequestration is codified by statute, which provides that, "[a]t the request of a party[,] the court shall order, or upon its own motion the court may order, witnesses excluded from a proceeding so that they cannot hear the testimony of other witnesses except as provided in subsection (2)." FLA. STAT. § 90.616(1). "In a criminal case, the victim of the crime, the victim's next of kin, the parent or guardian of a minor child victim, or a lawful representative of such person" may not be excluded, "unless, upon motion, the court determines such person's presence to be prejudicial." *Id.* § 90.616(2)(d).

or "any question regarding identification"—the trial court found that Garcia's presence hadn't prejudiced Nembhard, *id.* at 125:14–19; *see also* Trial Transcript VII [ECF No. 19-7] at 24:1–4 ("['The Court:] I questioned Ms. Turansky as to whether or not she had asked the witness to make any identifications of the Defendant and she said she did not. So[,] I'm satisfied.").

The same thing happened with David Montecino, who saw Nembhard as he (Montecino) was escorted by a prosecutor through the courtroom to an adjoining waiting room. *See* Trial Transcript VII [ECF No. 19-7] at 22. Nembhard's lawyer objected to Montecino's identification testimony for the same reason he'd objected to Garcia's—and, again, the trial court overruled his objection. *See id.* at 23:6–8 (denying counsel's objection because the trial court "never saw the State Attorney speak to [Montecino], [or] ask him to point out the Defendant"); *see also id.* at 27:18–20 ("Both these people identified the Defendant in a six-photo lineup close to the time of the incident.").

Although Nembhard advanced these claims in state court, *see* IAAC Petition at 37 (alleging that "[t]he trial court erred in denying [his] motion to strike the testimony of Janett[e] Garcia and motion for mistrial when both Janett[e] Garcia and David Montesino were in the courtroom prior to their testimony and were able to view the defendant" and that his "appella[te] counsel['s] fail[ure] to raise this claim on direct appeal[ ] depriv[ed] [him] the right to effective assistance of counsel"), the Third DCA rejected them, *see Nembhard*, 302 So. 3d 874. So do we.

### b. Analysis

*The Trial-Error Claim*. Nembhard hasn't even stated a cognizable due-process claim. In *Perry v. New Hampshire*, the Supreme Court held that, when police create "suggestive" identification procedures, "due process requires courts to assess, on a case-by-case basis, whether improper police conduct created a substantial likelihood of misidentification." 565 U.S. 228, 239 (2012) (cleaned up). If "indicators of [a witness's] ability to make an accurate identification are outweighed by the corrupting effect of law enforcement suggestion, the identification should be suppressed." *Ibid.*

35

(cleaned up). But this inquiry applies only to "*out-of-court* identifications volunteered by witnesses"—not to "in-court" identifications. *Id.* at 244–45 (emphasis added). And, relying on *Perry*, the Eleventh Circuit has held that, when a defendant is identified under suggestive circumstances "*not* arranged by police," "the requirements of due process are satisfied in the ordinary protections of trial." *United States v. Whatley*, 719 F.3d 1206, 1216 (11th Cir. 2013) (emphasis added & citation omitted). For that reason, "[d]ue process imposes no requirement of a preliminary examination for an in-court identification." *Ibid.* (citation omitted).

That rule controls here. Nembhard challenges only Garcia's and Montecino's in-court identification testimony. Under *Whatley*, due process didn't require the trial court to conduct any preliminary examination before allowing their identifications—much less did it require the court to exclude the witnesses' in-court testimony or declare a mistrial. As we've said, the normal procedural guarantees an accused receives at trial—including the right to cross-examine witnesses and to subpoena contrary evidence—is all the due process he's entitled to.

But here's the thing: Even if the trial court *were* required to perform some kind of preliminary assessment, Nembhard's claim would still fail. Nembhard *never* even tries to explain how or why the trial court was wrong to find that, since Garcia and Montecino hadn't been asked *any* questions about the identification—and because both had already made out-of-court identifications—Nembhard couldn't prejudiced by their courtroom presence. *See generally* Am. Petition; *see also Jones v. Gaither*, 640 F. Supp. 741, 747 (N.D. Ga. 1986) ("The petitioner *bears the burden* of showing that the admission of prejudicial evidence rendered his trial fundamentally unfair." (citing *Hill v. Linahan*, 697 F.2d 1032, 1037 (11th Cir. 1983) (emphasis added))).

At any rate, Nembhard hasn't shown that the Third DCA's denial of this claim was contrary to "clearly established [f]ederal law." *Allen*, 767 F. App'x at 789 (cleaned up). Indeed, he cites no clearly established federal law at all—neither in his Amended Petition nor in his Reply—for his view that due

process is violated when a witness who previously made an out-of-court identification briefly sees the defendant in the courtroom before testifying. *See generally* Am. Petition; Reply. That alone is enough for us to deny Ground VIII. *See Prance v. Sec'y, Dep't of Corr.*, 2019 WL 12536715, at *1 (11th Cir. May 8, 2019) (finding that the petitioner did "not establish that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law" where the petitioner "failed to identify any clearly established federal law . . . in support of his position"); *Peterson v. Fla. Dep't of Corr.*, 2024 WL 5672714, at *7 (S.D. Fla. May 29, 2024) (Gayles, J.) (rejecting a habeas claim where the petitioner "failed to identify any 'clearly established federal law' indicating that the [state parole commission]'s actions violated due process"). This trial-error claim thus fails on the merits.

   ***The Ineffective-Assistance Claim***. For two reasons, Nembhard's ineffective-assistance claim fails. *First*, he challenges his appellate lawyer's failure to argue that the trial court violated *state law*—Florida's "rule of sequestration." Am. Petition at 14 (citing FLA. STAT. § 90.616). But inasmuch as the trial court's ruling rested solely on Florida's sequestration rule, "the Supreme Court and [the Eleventh Circuit] have repeatedly acknowledged [that] it is not a federal court's role to examine the propriety of a state court's determination of state law," so we can't consider this claim. *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017) (citations omitted); *see also Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining that, "[o]n the one hand, the issue of ineffective assistance— even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law" (citation omitted)); *Martin v. Sec'y, Dep't of Corr.*, 2021 WL 5056084, at *18 (N.D. Fla. Sept. 7, 2021) (Timothy, Mag. J.) ("What [the petitioner's] argument comes down to is that the trial court incorrectly applied a state evidentiary rule . . . and that the evidentiary ruling deprived him of a fair trial. Federal courts will not generally review state trial courts' evidentiary determinations." (citation omitted)), *report and*

*recommendation adopted*, 2021 WL 5052470 (N.D. Fla. Nov. 1, 2021) (Wetherell, J.).

*Second*, to the extent that Nembhard faults his appellate lawyer for not raising a *federal* claim, he can't show *Strickland* prejudice. As we've explained, his claim fails on the merits because the trial court had no duty to conduct a preliminary examination of Garcia's and Montecino's in-court identifications—and it *certainly* wasn't required to declare a mistrial or exclude the in-court testimony. And Nembhard still hasn't shown that the trial court's ruling on the sequestration issue was wrong. We doubt that he could because other circuits have rejected due-process claims in similar settings. *See, e.g.*, *United States v. Jones*, 512 F.2d 347, 351 (9th Cir. 1975) (holding that a witness's viewing of the defendant in the hallway before trial was not "so unduly suggestive as to violate due process"); *United States v. Gilchrist*, 119 F. App'x 485, 492 (4th Cir. 2005) (finding that a witness's in-court identification of the defendant after seeing the defendant at counsel's table before testifying did not violate due process because the witness "would have seen [defendant] in any event a few moments later when she took the witness stand"); *United States v. Murray*, 65 F.3d 1161, 1169 (4th Cir. 1995) ("[A]lthough the [g]overnment allowed the witnesses to see [the defendant] seated at the defense table prior to their testimony, it did not create a substantial likelihood of irreparable misidentification" because the witnesses "would have seen [the defendant] at the defense table immediately before testifying."). Because Nembhard cannot show that his appellate lawyer was constitutionally ineffective, we **DENY** Ground VIII.

## VIII.   Ground IX

In Ground IX, Nembhard argues that his Sixth and Fourteenth Amendment rights were violated when the trial court erred by allowing state prosecutors to admit "highly prejudicial photos into evidence"—and when his appellate counsel failed to raise this issue on direct appeal. *See* Am. Petition at 14–15. The Respondent (again) treats Ground IX as just an ineffective-assistance-of-appellate-counsel claim rather than a trial-error claim. *See* Resp. at 55. Either way, Ground IX fails on

38

the merits.

At trial, the State introduced three photos of David Montecino's injuries. Two of the photos were "from the front" and "back angle[s]" of his hand—both "admitted to show the level of injury." Trial Transcript IV [ECF No. 19-4] at 65:9–11. The third photo was of "a bullet entry wound" on Montecino's thigh—his "second injury." *Id.* at 67. In Nembhard's IAAC Petition, he argued that he was prejudiced by the admission of these photos because one photo was "clear as day enough to prove the level of injury," and the additional photos therefore "unfairly impassioned the consideration of the evidence." IAAC Petition [ECF No. 18-3] at 75. The Third DCA rejected this claim. *See Nembhard*, 302 So. 3d 874.

***The Trial-Error Claim***. "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). But "[e]rroneously admitted evidence deprives a defendant of fundamental fairness only if it was a crucial, critical, highly significant factor in the defendant's conviction," and "[t]he introduction of graphic photographic evidence rarely renders a proceeding fundamentally unfair." *Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir. 1992) (cleaned up); *see also Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997) ("[A]dmission of 'gruesome' photos of the decedent in a murder case does not justify collateral relief, even when the evidence is cumulative and likely designed more to inflame the jury than to supply an essential underpinning of the prosecution's case.").

Nembhard can't show that the admission of these three photos made his trial fundamentally unfair for several reasons. *First*, the trial court rightly found the photos relevant. Nembhard was charged with causing Montecino "great bodily harm," and the trial court determined that the photos helped the jury understand the seriousness of Montecino's injuries. Trial Transcript IV [ECF No. 19-4] at 67:15–16. Plus, one of the photos was "corroborati[ve]" of Montecino's "verbal testimony," *id.*

39

at 67:19—a separate reason for admitting it. *Second*, the photos aren't especially inflammatory. The trial court described the photo of Montecino's thigh as showing "just an entry wound" with "very little blood." *Id.* at 67:11–12. Needless to say, jurors are often exposed to far worse. *See, e.g.*, *Scott v. Inch*, 2021 WL 2594817, at *15–16 (N.D. Fla. May 13, 2021) (Timothy, Mag. J.) (finding that a "fairminded jurist could conclude" that the admission of photographs "show[ing] the victim's skull and some blood on the skull" in the petitioner's murder trial "did not violate [his] federal constitutional rights to due process and a fair trial"), *report and recommendation adopted*, 2021 WL 2592547 (N.D. Fla. June 24, 2021) (Stafford, J.); *Loggins v. Att'y Gen. for Ala.*, 2009 WL 10675372, at *18 (N.D. Ala. Mar. 25, 2009) (finding no error in the admission of "gruesome" photographs of the victim's "mutilated" body where there was "no other way to demonstrate the crime scene, the torture inflicted upon [her], the injuries she suffered, how she died, and the location of her body when it was discovered"), *report and recommendation adopted*, 2009 WL 10676023 (N.D. Ala. May 27, 2009); *United States v. Brown*, 441 F.3d 1330, 1363 (11th Cir. 2006) (finding that the admission of "six photographs" of the murder victim's body depicting "blood" and "the number and nature of [repeated] stab wounds to her body" "did not result in [a] 'fundamentally unfair' proceeding that infected" the defendant's whole trial (citing *Spears v. Mullin*, 343 F.3d 1215, 1226–18 (10th Cir. 2003))).

*Third*, Nembhard hasn't otherwise explained—with any specificity—how the photos' admission rendered his trial fundamentally unfair. All he says is that they were "cumulatively gory." Am. Petition at 14. But he never identifies *which* photos were unduly prejudicial or *how* their alleged gore infected the trial. And since he cites no clearly established federal law for his position that the admission of gory photos violates due process, he hasn't shown that the Third DCA's rejection of this claim constituted "an unreasonable application" of federal law. *Allen*, 767 F. App'x at 789.

**The Ineffective-Assistance Claim**. Nembhard's ineffective-assistance-of-appellate-counsel claim fares no better. The photos were admitted at trial "without objection from defense counsel," as

Nembhard himself admits. IAAC Petition [ECF No. 18-3] at 75; *see also* Trial Transcript IV [ECF No. 19-4] at 65, 67 (noting that the defense didn't object to the admission of these photos). As we've said, Nembhard's appellate counsel "could not be ineffective for failing to raise an unpreserved issue." *Smith*, 2020 WL 6385016, at *4. We therefore **DENY** Ground IX.

## IX. Cumulative Error

Finally, Nembhard argues in his Reply that "the cumulative effect of all errors denied [him] a "fair and impartial trial." Reply at 29 (cleaned up). But this claim fails for two reasons. *First*, as we've said, we won't consider a brand-new claim Nembhard raises for the first time in reply. *See Foster v. Sec'y, DOC*, 2015 WL 518807, at *5, *7 (M.D. Fla. Feb. 9, 2015) (Chappell, J.) ("Petitioner's arguments contained in the Reply were not presented in the Petition and therefore did not provide Respondent the opportunity to respond. It is well established that arguments raised for the first time in a reply are improper." (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005))). *Second*, "none of [Nembhard]'s individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). We therefore **DENY** his cumulative-errors claim.

## EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on what we've said—and especially the presence of a robust trial and state-postconviction record—we don't think we'd benefit from any further factual development.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA,

therefore, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Jurists of reason wouldn't debate our assessment of Nembhard's constitutional claims, so we'll **DENY** any request for a COA.

## CONCLUSION

We therefore **ORDER AND ADJUDGE** as follows:

1. The Order Referring Case [ECF No. 32] is **VACATED**.

2. Oba Nembhard's Petition [ECF No. 1] is **DENIED**. Any requests for a COA and evidentiary hearing are **DENIED**.

3. All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.

4. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on March 24, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

42